668 F.2d 84
 1982 Copr.L.Dec. P 25,340
 SAILOR MUSIC, Wow and Flutter Music, Quackenbush Music,
Ltd., WB Music Corp., Jobete Music Co., Inc.,
Black Bull Music, Inc., and Gladys
Music, Plaintiffs-Appellees,
v.
The GAP STORES, INC., Defendant-Appellant.
 No. 394, Docket No. 81-7543.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 24, 1981.
Decided Nov. 30, 1981.
Opinion Filed Dec. 15, 1981.
 
 Robert G. Sugarman, New York City (Amy L. Katz, Weil, Gotshal & Manges, New York City, of counsel), for defendant-appellant.
 Jay Topkis, New York City (Bernard Korman, Judith M. Saffer, I. Fred Koenigsberg, Paul, Weiss, Rifkind, Wharton & Garrison, Bernard Korman, New York City, of counsel), for plaintiffs-appellees.
 Theodore S. Steingut, Berger, Steingut, Weiner, Fox & Stern, New York City, of counsel, for amicus curiae Nat. Retail Merchants Ass'n.
 Before KAUFMAN, TIMBERS and MESKILL, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from a judgment entered upon the order of Judge Lee P. Gagliardi, 516 F.Supp. 923, granting the motion for summary judgment of Sailor Music, Wow and Flutter Music, Quackenbush Music Ltd., WB Music Corporation, Jobete Music Company, Inc., Black Bull Music, Inc., and Gladys Music and finding that The Gap Stores, Inc. had made infringing use of the music companies' copyrighted works. Since we agree that The Gap Stores, Inc. does not come within the ambit of the exemption provided by 17 U.S.C. § 110(5),[1] we affirm.
 
 
 2
 The Gap Stores, a chain of approximately 420 clothing shops, transmits radio music programs throughout its stores by means of radio receivers connected to loudspeakers recessed in the ceilings of its stores. One of its shops, located in New York City at 354 Sixth Avenue, has four speakers recessed behind wire grids in the store's ceiling. The size of this store is 2769 square feet. The average size of all Gap stores is 3500 square feet. On September 27, 1978, radio programs featuring appellees' copyrighted songs were played in two Gap stores in New York City.
 
 
 3
 17 U.S.C. § 106(4)[2] grants copyright owners the exclusive rights publicly to perform, or authorize the performance of, their copyrighted works. Section 110(5) exempts from § 106(4) any "communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of the kind commonly used in private homes, unless-... (B) the transmission thus received is further transmitted to the public; ..."
 
 
 4
 In enacting § 110(5) Congress expressly considered the scope of the exemption this section provided. The House Committee sponsoring the 1976 Copyright Act made reference to Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975), a case holding that a fast-food shop of 1055 square feet with a commercial area open to the public of 620 square feet in which radio programs were played by means of a radio receiver connected to four speakers in the shop's ceiling was exempt pursuant to the 1909 copyright laws. The Committee noted that this particular fact situation represented the "outer limit" of the § 110(5) exemption. H. Rep. No. 1476, 94th Cong., 2d Sess., 87 (1976), U.S. Code Cong. & Admin. News 1976, p. 5659.
 
 
 5
 The Gap store in the instant case exceeds this "outer limit" as Judge Gagliardi properly held. It is much larger than the shop in Aiken which, as Judge Gagliardi concluded, indicates that Congress did not intend it to be exempted from the mandates of the copyright laws pursuant to § 110(5). Furthermore, the store is "of sufficient size to justify, as a practical matter, a subscription to a commercial background music service," H. Rep. No. 1733, 94th Cong., 2d Sess., 75 (1976), U.S. Code Cong. & Admin. News 1976, p. 5816, a factor which further suggests Congress did not intend that the Gap store would be exempt. See Korman, Performance Rights in Music Under Sections 110 and 118 of the 1976 Copyright Act, 22 N.Y.L.S.L. Rev. 521, 528-34 (1977). Accordingly, we conclude Judge Gagliardi correctly determined that The Gap Stores had made infringing use of appellees' copyrighted works.
 
 
 6
 Moreover, The Gap Stores claims that the injunction prohibiting it from "rendering any public performances by means of radio broadcasts over loudspeakers which would infringe plaintiff's copyrighted musical compositions" is vague. Indeed, an injunction must not be so vague that it is confusing. International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 74-76, 88 S.Ct. 201, 206, 19 L.Ed.2d 236 (1967). We believe the injunction is sufficiently clear to notify Gap Stores that broadcasting radio programs as it does now is forbidden. Thus, the injunction fulfills the requirement of Federal Rules of Civil Procedure Rule 65(d) that an injunction must be specific in terms to give the party subjected to the injunction fair notice of the forbidden conduct.
 
 
 7
 Accordingly, we affirm.
 
 
 
 [1]
 17 U.S.C. § 110 provides in pertinent part:
 Notwithstanding the provisions of section 106, the following are not infringements of copyright:
 (5) communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless-
 (A) a direct charge is made to see or hear the transmission; or
 (B) the transmission thus received is further transmitted to the public; ...
 
 
 [2]
 17 U.S.C. § 106 provides in pertinent part:
 Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
 (4) in the case of literary, musical, dramatic, or choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; ...